**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**MARY SKIPPER**                                                                                      **PLAINTIFF**

**VS.**                            **CASE NO. 3:10CV00294 HDY**

**MICHAEL J. ASTRUE, Commissioner,
    Social Security Administration**                                                       **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on December 12, 2007.  Her application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 35 years old at the time of the hearing, which was conducted on October 7, 2009.  (Tr. 22-45).  The plaintiff, who has a tenth grade education and obtained a GED, testified at the hearing, as did a vocational expert.  The plaintiff testified that she lived with her three children, aged 14, 8, and 8.  (Tr. 28).  She stated that she had previously worked as a cashier in a gas station, had been a substitute teacher, and had been a kitchen worker at a nursing home.  (Tr. 29-30).  The plaintiff described her medical problems as being diagnosed with rheumatoid arthritis, having significant side effects from her medications, and being depressed.  (Tr. 31, 37).  She also noted that her medicine causes problems with her hands, and she wears restraints to keep her fingers in one position.  (Tr. 33).  She testified to limited daily activities.  She stated that she tried to do housework but that her son helps with dishwashing.  (Tr. 34).  While she has a driver's license, she does not own a vehicle.  She stated that she typically sends her children to school then tries to ride a stationary bicycle for ten minutes and do other physical therapy.  At times, she testified that she would walk for about 30 minutes in her house.  (Tr. 34-35).  She has a cane and a walker at her house, and typically uses a wheelchair when she goes to the grocery store, according to the plaintiff.  (Tr. 36).  The plaintiff testified to crying spells lasting one to two hours.  (Tr. 37-38).  The plaintiff said she could not run or jump, could bend forward "to an extent," and can lift, push, and pull on occasion.  She indicated she could not climb but she could crawl.  (Tr. 39).  The medications she takes cause significant side affects, according to the plaintiff, including loss of gums, loss of cartilage in her knees, haziness, and deterioration of her bones.  (Tr. 31, 37, 39).

On April 19, 2010, the ALJ found the plaintiff was not disabled as defined in the Social

Security Act. (Tr. 10-17). The ALJ specifically found the medical evidence established the plaintiff has the severe impairment of rheumatoid arthritis. The ALJ found the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found the plaintiff has the residual functional capacity to perform light work except that she must be able to alternately sit or stand. The ALJ concluded the plaintiff was not capable of performing her past relevant work. Relying upon the testimony of the vocational expert, the ALJ found the plaintiff could perform jobs within the national economy. For example, the ALJ found plaintiff could perform the job of cashier and hand packer (both of these jobs containing a sit/stand option). Thus, the ALJ found the plaintiff was not disabled. The Appeals Council, on October 29, 2010, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff asserts that the ALJ erred by posing a hypothetical question to the vocational expert when the question was not supported by the record, and that the ALJ erred in assessing her credibility. *Plaintiff's brief at 28-31.*

The plaintiff advances two reasons why the hypothetical question posed to the vocational expert was in error. First, the plaintiff alleges the limitations included in the hypothetical question were inconsistent with the opinion of treating physician Dr. Majewski. The plaintiff cites Dr. Majewski's medical source statement dated March 17, 2010, and notes that this statement was first presented to the Appeals Council[1]. The plaintiff correctly observes that evidence presented to the Appeals Council is treated as part of the administrative record. *Mackey v. Shalala*, 47 F.3d 951 (8th Cir. 1995). The plaintiff goes on to argue that the Appeals Council was obligated to explain why it rejected Dr. Majewski's opinion rather than simply stating that Majewski's opinion did not provide a basis for changing the ALJ's decision. The plaintiff contends it was reversible error for the Appeals Council to fail to provide specific, legitimate reasons for according little weight to the statement provided by Dr. Majewski. The citations offered by the plaintiff do not establish that the

---

[1] The administrative hearing was conducted in October of 2009 and the ALJ's opinion was issued on April 19, 2010. The medical source statement was dated March 17, 2010, about one month before the ALJ's ruling.

Appeals Council was required to discuss in detail the 2010 statement of Dr. Majewski. The record shows the Appeals Council received the statement of Dr. Majewski. (Tr. 4). Further, the Appeals Council specifically noted receipt of the additional evidence and that this evidence "did not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2). We find no error in the manner in which the Appeals Council examined the statement of Dr. Majewski.

The plaintiff also argues that the Commissioner erred by formulating and posing a hypothetical question that contradicted Dr. Majewski's opinion. The first hypothetical question posed by the ALJ included the following assumption: the individual would be limited to no more than light work with a sit/stand option. The second hypothetical question assumed an individual who could perform sedentary work. Dr. Majewski's March 15, 2010, source statement, however, rated the plaintiff's maximum capacities as frequently lifting or carrying 10 pounds, occasionally lifting or carrying less than 10 pounds, standing and/or walking one hour continuously, sitting four hours continuously, pushing and/or pulling up to 25 pounds, being unable to climb, balance, stoop, kneel or crouch, needing environmental restrictions, and having interference in her ability to be alert on the job due to daytime sleepiness and fatigue. (Tr. 560-562). We find no error in the hypothetical questions formulated by the ALJ, since the limitations contained in the medical source statement are not consistent with the medical evidence in the record. It is particularly telling that the limitations in the medical source statement are not consistent with Dr. Majewski's medical findings over the years which she treated the plaintiff. For example, treatment notes from Dr. Majewski from 2006-2010 show that she typically found the plaintiff's rheumatoid arthritis to be stable, treated plaintiff on occasion for depression symptoms, cautioned the plaintiff to return for appointments, typically found no swelling or tenderness in the plaintiff's joints, and recommended

exercise such as yoga or pilates.  During the course of treatment, Dr. Majewski did not opine the plaintiff was disabled.  The treatment notes of Dr. Majewski are similar to the findings of treating physician Bing, who found the plaintiff to have normal coordination and to have "reasonably controlled" pain with medication.  (Tr. 302).  Consultative examiner Dr. Knott also found the plaintiff to have rheumatoid arthritis and pain issues[2].  These findings are consistent with the treatment notes of Drs. Majewski and Bing.  In summary, the March 2010 statement submitted by Dr. Majewski was at odds with the overall treatment record of both the treating physicians (including Dr. Majewski) and the consultative examiner.  There was no error in the Appeals Council's treatment of the March 2010 statement.  Substantial evidence supports the hypothetical questions formulated by the ALJ and the decisions of the ALJ and the Appeals Council utilizing the vocational expert's responses to the hypothetical questions.  There is no merit to the first claim of the plaintiff.

For her second claim, the plaintiff urges the ALJ erred in assessing her credibility.  In his opinion, the ALJ cited the familiar *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), case as governing the analysis of the plaintiff's subjective allegations.  The ALJ noted that the plaintiff alleged disabling joint pain but that "physical examinations since 2006 have shown no synovitis, very little joint swelling, and infrequent bouts of fatigue."  (Tr. 15).  The ALJ also noted that no physician had imposed limitations equal to those self-imposed by the plaintiff.  The ALJ also cited the plaintiff's ability to care for her children, cook, do laundry and other daily chores as factors in discounting her credibility.  (Tr. 15).  The ALJ also noted that the plaintiff's rheumatoid arthritis is

---

[2] Dr. Knott diagnosed the plaintiff with: (1) multiple pain complaints; (2) rheumatoid arthritis; (3) Osteoarthritis; and (4) History of carpal tunnel syndrome.  Dr. Knott also noted that some of the pain complaints of the plaintiff may be a "magnification of her pain."  (Tr. 550).

stable when she is compliant with her medication regimen, and that this stability weighs against her credibility. We find substantial evidence supports the ALJ's credibility assessment, even though the ALJ should not have included plaintiff's driving in her daily activities. (She testified that she did not drive, though she possessed a driver's license. (Tr. 34)). The absence of objective medical evidence, the absence of any physician's opinion that the plaintiff is disabled, and the stability of the plaintiff when taking her medications weigh significantly in favor of the ultimate credibility ruling of the ALJ. There is no merit to the second claim of the plaintiff.

In summary, we find no merit in the arguments advanced by the plaintiff.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this __6__ day of October, 2011.

_____
UNITED STATES MAGISTRATE JUDGE